[Crim. No. 2978. Fifth Dist. July 29, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ALLEN SWEETSER, Defendant and Appellant.

**COUNSEL**

Lillick, McHose & Charles, R. Frederic Fisher and Barbara H. Buggert for Defendant and Appellant.

Evelle J. Younger, Attorney General, N. Gregory Taylor and Jan Stevens, Assistant Attorneys General, as Amici Curiae on behalf of Defendant and Appellant.

Albert M. Leddy, District Attorney, and Stephen M. Tauzer, Deputy District Attorney, for Plaintiff and Respondent.

**OPINION**

**GARGANO, J.**—This litigation, though labeled a criminal prosecution, is in reality a civil dispute between two private individuals. Appellant is a resident of Kern County with an avocation for the sport of kayaking. His antagonist is George Nickel, Jr., who owns the Rio Bravo Ranch in Kern

County. The dispute centers upon appellant's right to use a small unimproved portion of a county highway easement located within the Rio Bravo Ranch for ingress to and egress from the Kern River.

The basic facts are undisputed.

In the year 1940, George Nickel's predecessor in interest to the Rio Bravo Ranch conveyed a 60-foot-wide strip of land to Kern County for use by the county as "an easement or right-of-way for public highway purposes." The easement traversed the Rio Bravo Ranch in a north-south direction and extended over and across the bed of the Kern River which ran westerly through the ranch for a distance of approximately five and one-half miles. Presently, the 60-foot-wide easement is a part of an improved county highway known as Rancheria Road, and this highway, in crossing through the Rio Bravo Ranch, passes over the Kern River by way of a bridge 30 feet wide; in the area where the highway approaches the bridge, the paved portion of the road narrows to a width of 30 feet, leaving an unimproved 15-foot-wide strip of land on each side of the bridge; these strips of land are fenced off from the traveled roadway and are posted with "no trespassing" signs.

On July 15, 1973, Robert Folsom, a security guard for the Rio Bravo Ranch, was driving on Rancheria Road when he saw appellant climb under the fence at the northeast corner of the bridge; appellant was carrying a kayak toward the river. The security guard had seen appellant kayaking in the river in that area a few days earlier and on that occasion had told him to leave. Folsom got out of his automobile, climbed down the embankment and caught up with appellant when appellant was a short distance away from the river. He reminded appellant that he was trespassing on private property and again asked him to leave. Appellant replied that his "rights" were being infringed upon, placed his boat in the river and commenced kayaking. Folsom climbed back up the embankment, returned to his vehicle and ultimately called the sheriff's office.

A short time later, Deputy Sheriff Edward Leavelle arrived at the scene. Appellant still was kayaking in the river below the bridge. The deputy asked appellant to come up to the road; appellant complied. Relying upon Folsom's statement that appellant refused to leave the area at Folsom's request, the deputy cited appellant for a criminal trespass.

On July 16, 1973, a criminal complaint was filed in the Municipal Court for the Bakersfield Judicial District charging appellant with a violation of subdivision (k)(l) of section 602 of the Penal Code.[1] Appellant entered a plea of not guilty to the charge, and, after a one-day court trial, was convicted of the offense. Appellant appealed to the Appellate Department of the Superior Court of Kern County, and the conviction was reversed. Thereafter, we transferred the cause to this court for review.

■ Preliminarily, it is clear that appellant was not committing a trespass while he was kayaking on the Kern River near the vicinity of Rancheria Road. The uncontradicted evidence shows that, for the purposes of boating and kayaking, the river in that area could be "boated" the year round. In this state the public has a right to use for boating, swimming, fishing, hunting and all other recreational purposes, any part of a river that can be navigated by small recreational or pleasure boats, even though the river bed is privately owned. (*Hitchings* v. *Del Rio Woods Recreation & Park Dist.* (1976) 55 Cal.App.3d 560, 566-571 [127 Cal.Rptr. 830]; *People* ex rel. *Baker* v. *Mack* (1971) 19 Cal.App.3d 1040, 1044-1050 [97 Cal.Rptr. 448]; *Bohn* v. *Albertson* (1951) 107 Cal.App.2d 738, 742-757 [238 P.2d 128].) ■ As the court explained in *People* ex rel. *Baker* v. *Mack, supra,* 19 Cal.App.3d 1040, 1050: "The modern determinations of the California courts, as well as those of several of the states, as to the test of navigability can well be restated as follows: members of the public have the right to navigate and to exercise the incidents of navigation in a lawful manner at any point below high water mark on waters of this state which are capable of being navigated by oar or motor-propelled small craft."

We turn to the question as to whether appellant was trespassing upon George Nickel's land before he entered the Kern River with his kayak.

■ In the present case, it is undisputed that appellant was walking within the perimeters of a county easement conveyed for "public highway purposes" and was carrying his kayak to the river when Nickel's security guard asked him to leave the premises. Consequently, appellant was acting within the scope of the easement when he refused to leave and instead placed his boat into the river. An easement for public

---

[1]Under subdivision (k)(l) of section 602 of the Penal Code, any person who willfully commits a trespass by entering any land enclosed by a fence without the written permission of the owner or his agent, or the person in lawful possession, and who refuses or fails to leave the land immediately upon being requested to do so by the owner or his agent, or the person in lawful possession, is guilty of a misdemeanor.

highway purposes includes ". . . every kind of travel . . . for the movement or transportation of persons or property which is reasonable and proper in the use of a public way, or of a particular portion thereof, . . . " and embraces all public travel on foot or in vehicles that is not prohibited by law or by a restriction in the easement itself. (39 Am.Jur.2d (1968) Highways, Streets, and Bridges, § 195, pp. 573-574.) In addition, while the mere granting of a public highway easement along the shore of a navigable river outside of a town or city does not necessarily carry with it a right of access to the river as an incident to the use of the highway (*California etc. Co.* v. *Union etc. Co.* (1899) 126 Cal. 433, 438, 440 [58 P. 936]), where, as here, the easement not only intersects with the navigable river but crosses the river bed and continues on over lands located on the other side, it grants access to the river as an incident to the use of the highway, absent a showing of a contrary intent on the part of the grantor and the grantee. (See 39 Am.Jur.2d (1968) Highways, Streets, and Bridges, § 256, p. 644.)

■ However, this does not end our inquiry, for we do not subscribe to the proposition that members of the public have the unrestricted right to use the entire width of a county easement conveyed for public highway purposes as appellant seems to maintain. Although the members of the public have an inalienable right to use public highways in a reasonable manner without obstruction and interruption, this right is subject to the power of a county to impose reasonable regulations restricting the use of a county highway. (Sts. & Hy. Code, § 942.5; *Acosta* v. *County of Los Angeles* (1961) 56 Cal.2d 208, 210 [14 Cal.Rptr. 433, 363 P.2d 473, 88 A.L.R.2d 1417]; see *Escobedo* v. *State of California* (1950) 35 Cal.2d 870, 875-876 [222 P.2d 1]; *Ex parte Daniels* (1920) 183 Cal. 636, 639 [192 P. 442, 21 A.L.R. 1172]; *Findley* v. *Justice Court* (1976) 62 Cal.App.3d 566, 572 [133 Cal.Rptr. 241].) For example, the public's right to use a county highway easement conveyed for public highway purposes does not arise until after the easement has been "opened" by the county for such purposes. (See 39 Am.Jur.2d (1968) Highways, Streets, and Bridges, § 68, p. 455.) Also, a county is not required to open or improve, for public travel, the full width of a county easement; on the contrary, a county is fully justified in refusing to do so where its purpose is to insure the safety of the traveling public. (See Sts. & Hy. Code, §§ 942.5, subd. (a), 4001, 4090, 5005, 5101.) Finally, a county even has the statutory authority to issue a written encroachment permit allowing any person, including the underlying landowner, to place fences or other structures or objects upon portions of a county highway easement. (Sts. & Hy. Code, §§ 1450, subds. (a) and (b), 1460, subd. (b).)

The case of *People* v. *Henderson* (1948) 85 Cal.App.2d 653 [194 P.2d 91], upon which appellant relies for the proposition that the public has the unrestricted right to use the entire width of a highway easement, is distinguishable. There, the defendant landowner, without having an encroachment permit (see Sts. & Hy. Code, §§ 660, 670), built a shed within an unimproved and unused portion of a dedicated state highway easement. Then the state brought an action to compel the landowner to remove the shed. The court compelled the defendant to remove the building even though it did not obstruct uses that were being made of the easement, or interfere with the view of the users of the highway. It was only in that context that the court stated: "Where the sole question is whether the maintenance of the structure or obstruction is inconsistent with the full enjoyment of the right of way by the public, the owner of the fee is deemed to possess no greater rights than those who are strangers to the title." (*Supra,* 85 Cal.App.2d at p. 656.)

■ Nevertheless, we have concluded that under the circumstances of this case, the People did not meet their burden of proof. ■ Under subdivision (k)(l) of section 602 of the Penal Code, the statute appellant was convicted of violating, it is not sufficient merely to show that the accused willfully entered upon the fenced lands of another without written permission and then refused to leave the lands when requested to do so; it is also incumbent to prove that the accused's presence on the land constituted a trespass in the sense that he invaded another's exclusive right of possession. (See 1 Rest.2d Torts (1965) pp. 275-276; Prosser, Torts (4th ed. 1971) § 13, pp. 68-69; 75 Am.Jur.2d (1974) Trespass, § 22, p. 24.) Furthermore, a landowner who grants an easement to a governmental entity for public highway purposes possesses no right with respect to passage and travel thereover that is greater than that of the general public. (*Santa Barbara* v. *More* (1917) 175 Cal. 6, 10 [164 P. 895]; *Gurnsey* v. *Northern Cal. Power Co.* (1911) 160 Cal. 699, 705 [117 P. 906]; *Colegrove Water Co.* v. *City of Hollywood* (1907) 151 Cal. 425, 429 [90 P. 1053]; *People* v. *Henderson, supra,* 85 Cal.App.2d 653, 656; see 39 Am.Jur.2d (1968) Highways, Streets, and Bridges, § 160, pp. 535-536.) Accordingly, one who uses an easement conveyed for public highway purposes within the scope of the initial grant is not a trespasser against the landowner. (Cf. *Porter* v. *City of Los Angeles* (1920) 182 Cal. 515, 518-519 [189 P. 105]; 39 Am.Jur.2d (1968) Highways, Streets and Bridges, § 187, p. 565.)

■ Here, the uncontradicted evidence shows that the only person who requested appellant to leave was George Nickel's security guard. It

was, therefore, the People's burden to prove that appellant was committing a trespass against the landowner when the security guard asked him to leave. Yet the state presented no evidence to show who fenced the unimproved strip upon which appellant was walking or, if the landowner did so, under what conditions the fence was built. For instance, if the county erected the fence that separated the paved portions of Rancheria Road from the unimproved strips for some county purpose, appellant was not committing a trespass against George Nickel when he was asked to leave by the security guard; at the very most, he was committing a trespass against the county by walking on a part of a county easement that had not been opened for public travel. On the other hand, if George Nickel erected the fences without first obtaining a written encroachment permit, he, not appellant, was committing a trespass. (See *People* v. *Henderson, supra,* 85 Cal.App.2d 653, 656-659.) Because the People's evidence is totally lacking on a vital point, the municipal court's determination that appellant committed a criminal trespass is not supported by substantial evidence.

The judgment is reversed.

Brown (G. A.), P. J., and Franson, J., concurred.